IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JASON BERBERENA-GARCIA

    Plaintiff

v.

EDWIN AVILES, et al

    Defendants

Civil No. 06-1907 (SEC)

**OPINION AND ORDER**

Pending before this Court is Defendants Edwin Aviles, Edgardo Aldebol, Miguel Maldonado, Carlos Delgado and Jose O. Ramos'(collectively "Defendants") motion for partial summary judgment (Dockets ## 119, 120 & 134), and Plaintiff Jason Berberena-Garcia's opposition thereto (Docket # 125). After reviewing the filings, and the applicable law, Defendants' motion for partial summary judgment is **GRANTED in part and DENIED in part.**

**Factual and Procedural Background**

On September 14, 2006, Plaintiff filed the instant suit under Sections 1983 & 1988 of the Civil Rights Act of 1964, 42 U.S.C. § 1983 & 1988, the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution, Article II of the Commonwealth's Constitution, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws ann. tit. 31, § 5141, against herein Defendants in their individual capacities. In the complaint, Plaintiff alleges that, on September 15, 2005, Defendants, marshals from the P.R. Office of the Courts Administration, appeared at his home to arrest him for unpaid child support. According to Plaintiff, he was detained while on the roof of a neighbor's house.  He avers that, per the

**CIVIL NO. 07-1394 (SEC)**                                                                 Page 2

marshals' request, he lay down on the rooftop and allowed the marshals to handcuff him. Plaintiff further alleges that, thereafter, the marshals assaulted and battered him by kicking him throughout his body. Additionally, Plaintiff contends that Defendants deliberately pushed him off the roof, causing him to fall from a height of approximately ten feet to the ground, where he landed on his face, head, and shoulder. Plaintiff claims that, as a result of the aforementioned events, he suffered multiple and severe injuries.

On January 15, 2009, Defendants filed the instant motion, requesting the dismissal of Plaintiff's claims under Section 1983, his supervisory liability claim under Section 1983, and his Fifth, Eighth, Ninth, and Fourteenth Amendment claims. They further argue that they are entitled to qualified immunity. Plaintiff opposed to the dismissal of his Section 1983, supervisory liability, and Fourteenth Amendment claims. However, Plaintiff agrees to the dismissal of his Fifth, Eighth, and Ninth Amendment claims.

**Standard of Review**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

**Civil No. 06-1907 (SEC)** 3

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (internal citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be

**Civil No. 06-1907 (SEC)**                                                                 4

conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Applicable Law and Analysis**

Because the instant motion is for summary judgment, Defendants must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). The First Circuit has held that when the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000). Both parties have complied with Rule 56.

Upon reviewing the parties' filings, this Court finds the following facts are uncontested. Plaintiff had a legal obligation to pay $400 monthly in child support. Defendants' Statement of Uncontested Facts, Docket # 120 ("SUF"), ¶ 1. By September 15, 2005, Plaintiff had an outstanding debt due to unpaid child support. Id. at ¶ 2. The Caguas Superior Court issued an

order of arrest against Plaintiff for said unpaid child support. Id. at ¶ 3. On September 8, 2005, the Regional Administrative Judge of Caguas authorized a special operation to serve twenty eight arrest warrants. Id. at ¶ 4. The special operation was coordinated for September 15, 2008. Id. at ¶ 5. Plaintiff's arrest warrant was among those included in the special operation. Id. at ¶ 6. Eight deputy marshals from Caguas were assigned to work on the special operation. Id. at ¶ 7. The deputy marshals for the special operation were divided into two routes, A and B. Id. at ¶ 8. Aldebol, Maldonado, Delgado, and Ramos were assigned to work on Route B. Id. at 9 & 10. During the special operation, twenty three arrest warrants were executed, and Plaintiff was one of those arrested. Id. at ¶¶ 11 & 12. He was arrested in the roof top of a neighbor's house, and following his arrest, was incarcerated. Id. at ¶¶ 14 & 15.

Aldebol, Maldonado, Delgado, and Ramos are deputy marshals of the Office of the Courts Administration. Id. at ¶ 16. They completed the marshal academy with the Office of Courts Administration, and have received additional training. Id. at ¶ 17. On September 2005, Aldebol, Maldonado, Delgado, and Ramos worked in the Unit of Arrests and Citations in the Caguas Superior Court. Id. at ¶ 18. The position of deputy marshal does not include supervisor duties. Id. at ¶ 19. Therefore, Aldebol, Maldonado, Delgado, and Ramos are not supervisors. Id. at ¶ 20. Prior to September 15, 2005, the Caguas Superior Court had issued several arrest warrants against Plaintiff, and he had previously been arrested for unpaid child support. Id. at ¶¶ 21 & 22. The Administrator Judge of Caguas ordered an investigation regarding Plaintiff's arrest. Id. at ¶ 23. The Regional Marshal rendered a report regarding said arrest. Id. at ¶ 24. Aldebol, Aviles, and Maldonado do not have any administrative complaints filed against them for excessive use of force. Id. at ¶¶ 26-28. Ramos and Delgado have never been sued for civil rights violations, aside from the instant case. Id. at ¶¶ 29-30.

**Civil No. 06-1907 (SEC)** 6

*Plaintiff's Section 1983 Claims*

Defendants' argue that Plaintiff failed to state a Section 1983 claim. Moreover, they aver that Plaintiff's claims for supervisory liability under said section also fails insofar as Defendants are not supervisors. Plaintiff opposes dismissal, arguing that Defendants failed to show that Plaintiff has not adequately pled a Section 1983 claims, as the averments within their complaint, and their Statement of Contested Material Facts, are sufficient to survive summary judgment. This Court begins its discussion by addressing the Section 1983 standard.

A claim under Section 1983 is established by demonstrating that a government official, acting under the color of state law, has caused the depravation of a federal right. Burke v. Town of Walpole, 405 F.3d 66, 76 (1st Cir. 2005) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Furthermore, a Plaintiff in a civil rights action must allege an injury to a cognizable interest, and that this injury is "...causally related to the challenged conduct," and can be redressed through the litigation in question. See Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. P.R. 2006). The conduct alleged to have caused the violation must also be intentional or recklessly indifferent to the plaintiff's federal statutory or constitutional right. Del Villar-Rosario v. P.R. DOJ, No. 06-2089, 2008 U.S. Dist. LEXIS 36059,*5 (D.P.R. Mar. 3, 2008); see also Gutierrez Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

The First Circuit has held that "[i]n an action brought under §1983, supervisors are not automatically liable for the misconduct of those under their command." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). However, a supervisor's liability "can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Camilo Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Unless the

**Civil No. 06-1907 (SEC)** 7

---

supervisor directly participated in the deprivation of the plaintiff's constitutional rights, he may only be held liable if: "(1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Id. (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995)).[1]

Based on the foregoing uncontested facts, and Plaintiff's Statement of Contested Material Facts (Docket # 125-3), this Court finds that there could be several constitutional violations on the part of the police officers, which remains to be determined during trial. Specifically, this Court notes that Defendants participated directly in the special operation during which Plaintiff's alleged constitutional violations occurred, and which led to this suit. Furthermore, there is controversy as to whether Defendants beat Plaintiff, and pushed him off the roof. Therefore, Defendants could be held liable under Section 1983. As such, Plaintiffs have pled the necessary elements for a Section 1983 claim against each of the Defendants, and have shown that material issues of fact remain as to whether Defendants engaged in illegal conduct. As such, Defendants' motion for summary judgment on this front is **DENIED**. However, Plaintiff has stated that he will not pursue any supervisory liability claims against

---

[1] Failure to train claims may, in appropriate circumstances, lead to an imposition of liability on a supervisor or a municipality. See Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) (liability will attach if "the municipality fails to provide adequate training notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights") (citing Whitfield, 431 F.3d at 10). However, an assertion that a supervisor "failed to train" his subordinates and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the street-level misconduct, is not enough. See Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204 (D.P.R. 2001) (dismissing claims against Police Superintendent; broad and general allegations of inadequate training and supervision of the police force that are not linked to the particular defendants joined in the action insufficient to state a claim against the superintendent); Rodríguez-Esteras, 266 F. Supp. 2d 270 (dismissing failure to train claim against police superintendent for failure to plead minimum facts in support of such a claim).

**Civil No. 06-1907 (SEC)** 8

Aldebol, Maldonado, Delgado, and Ramos, since they are not supervisors. Therefore, the supervisory liability claims against them are **DISMISSED with prejudice**. Notwithstanding, controversy remains as to wether Aviles is a supervisor, and if he was present the day of the events that led to this suit. See Plaintiff's Statement of Contested Material Facts, Docket # 125-3. Therefore, summary judgment as to the supervisory liability claims against Aviles is **DENIED**.[2]

*Plaintiff's Fifth Amendment Claims*

Because there are no federal actors in this case, Defendants argue that the Court should dismiss Plaintiff's Fifth Amendment claim, and Plaintiff agrees. The Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law..." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F. 2d 447, 449 (1st Cir. 1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Martínez-Rivera v. Sánchez-Ramos, 498 F. 3d 3, 8 (1st Cir. 2007) (affirming dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers where state actors and not federal actors). Because Plaintiff's complaint does not allege that any of the Defendants are federal actors; instead he avers that they are state officials acting under color of state law, his claim pursuant to the Fifth Amendment is hereby **DISMISSED with prejudice.**

*Plaintiff's Eighth Amendment Claims*

The United States Supreme Court has stated that this amendment, applicable to the states through the Fourteenth Amendment, "prohibits the infliction of cruel and unusual punishments

---

[2] This Court notes that, in his opposition, Plaintiff argues that his constitutional rights were violated by Edwin Perez Febus, herein Defendants' alleged supervisor. However, Plaintiff admits that Edwin Perez Febus is not a party to the instant case because this Court did not allow additional amendments to the complaint. As such, Plaintiff's arguments of supervisory liability as to Edwin Perez Febus lack merit. Docket # 125, p. 12.

**Civil No. 06-1907 (SEC)**                                                                                           9

on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296-97 (1991)(emphasis added); see also Martínez-Rivera, 498 F. 3d at 8. That is, the Eight Amendment only comes into play after there has been a formal adjudication of guilt, through a criminal prosecution, in accordance with due process of law. Martínez-Rivera, 498 F. 3d at 8 (stating that "because there had been no formal adjudication of guilt against [Plaintiffs] at the time of the alleged constitutional deprivation, the Eighth Amendment is inapplicable and any claim brought on that theory was properly dismissed.")  The amendment also covers "deprivations that were not specifically part of the sentence but were suffered during imprisonment." Id. at 297. Furthermore, "only the unnecessary and wanton infliction of pain implicates the Eight Amendment." Id.

Plaintiff has not alleged that he was convicted and imprisoned, after a formal process of adjudication, and subjected to unnecessary and wanton infliction of pain as punishment. On the contrary, he states that he was arrested and incarcerated, but admits that there was a valid warrant for his arrest. As this Court will discuss shortly, the Supreme Court has held that claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989); see also Tavarez-Guerrero v. Toledo-Davila, 573 F. Supp. 2d 507, 512 (D.P.R. 2008). Thus, the Eighth Amendment is inapplicable to the instant case. Moreover, Plaintiff concedes to the dismissal of his Eighth Amendment claim. Therefore, Plaintiff's claim under the Eight Amendment is hereby **DISMISSED with prejudice.**

*Plaintiffs' Ninth Amendment Claims*

Defendants argue that the Ninth Amendment does not create a constitutional right or a private cause of action and, as a result, the before mentioned claims should be dismissed. The Ninth Amendment provides "that 'the enumeration in the Constitution of certain rights, shall

not be construed to deny or disparage others retained by the people.'" U.S. Const. amend. IX. The First Circuit Court has previously stated that the Ninth Amendment "does not create substantive rights beyond those conferred by governing law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir.1997); see also Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir.1991). It "refers only to unenumerated rights, while claims under §1983 must be premised on specific constitutional guarantees." Bussey v. Phillips, 419 F. Supp.2d 569 (S.D.N.Y.2006); see also Khalid v. Reda, 2003 WL 42145, at p.6 (S.D.N.Y. 2003)(unpublished); Gibson, 926 F.2d at 537 (dismissing Plaintiffs' Ninth Amendment claim on the ground that "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law."); DeLeón v. Little, 981 F. Supp. 728, 734 (D. Conn.1997) (holding that "the [Ninth Amendment] does not guarantee any constitutional right sufficient to support a claim under 42 U.S.C. §1983."). In his opposition, Plaintiff concedes to the dismissal of these claims. Considering the foregoing, and because Plaintiffs' claim arise under Section 1983, that is, a section that requires a specific constitutional right violation, Plaintiff's Ninth Amendment claim is **DISMISSED with prejudice**.

*Plaintiffs' Fourteenth Amendment Claims*

Defendants argue that Plaintiff's Fourteenth Amendment claim fails insofar as there was a valid warrant for his arrest. In response, Plaintiff contends that, during his arrest, Defendants used violence and excessive force, and pushed him off the roof while still in handcuffs, in violation of his substantive due process rights.

Under the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In order to establish a procedural due process claim under Section 1983, a plaintiff must first prove that he has a property interest as defined by state law and, second, that Defendants, acting under color of

**Civil No. 06-1907 (SEC)**                                                                                          11

state law, deprived him of that property interest without a constitutionally adequate process. Logan v. Zimmerman Brush Co., 455 U.S. 422,428 (1982); PFZ Properties, Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991). As previously stated, there was a valid arrest warrant for Plaintiff, thus, any procedural due process claims fail.

However, Plaintiff also argues that he has shown that the defendants engaged in conscience-shocking behavior by beating him, and throwing him off the roof, and as such, violated his substantive due process rights. To meet the burden on a substantive due process cause of action, Plaintiff must "present a well-pleaded claim that a state actor deprived it of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing Clark, 514 F.3d at 112; see also Ramos-Pinero v Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006) (stating that the "shock the conscience" standard implicates behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience") (citing County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998))). Only "[b]ehavior 'intended to injure in some way unjustifiable by any government interest' - is the sort of official action most likely to 'shock the conscience.'" Ramos-Pinero, 453 F.3d at 53 (citations omitted).

The Supreme Court has held that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). As such, the Court has rejected imposing tort liability under the Fourteenth Amendment, and has held "that the Constitution does not guarantee due care on the part of state officials." Id. According to the Court, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849. Although deliberate indifference may also be sufficient to satisfy a due process claim, it must be equally

**Civil No. 06-1907 (SEC)**                                                                 12

shocking to the conscience. Insofar as conduct "that shocks in one environment may not be so patently egregious in another, (the need to preserve) the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." Id. at 850. Courts have found substantive due process violations in cases such as a rape by a police officer, a nearly two-month unlawful imprisonment, a shooting, a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, a 57-day unlawful detention in the face of repeated requests for release, police officers aiding a third-party in shooting the plaintiff, and depriving an arrestee that is held in a state police station of food and water for a substantial period of time. See Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations omitted); Tavarez-Guerrero v. Toledo-Davila, 573 F. Supp. 2d 507, 513-14 (citing Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 200 (1989)). As such, substantive due process claims are limited to severe cases, and holding otherwise would be to lower the very high threshold for constitutional wrongdoing. Cummings, 271 F.3d at 346.

Plaintiff's substantive due process claim, premised on violations of his "personal integrity" (See Docket # 125, p. 11) fails insofar as his claim is really an excessive force claim that should be, and is, brought under the Fourth Amendment. Wainwright, 548 F.3d at 163; see also Graham, 490 U.S. at 395. The Supreme Court has held that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of ... [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395; see also Wainwright, 548 F.3d at 163. A "seizure" which entitles Plaintiff to "the Fourth Amendment's protections occurs only when government actors have, 'by means of

physical force or show of authority, . . . in some way restrained the liberty of a citizen...'" Graham, 490 U.S. at 395, n. 10 (citing Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968)). The Court further stated that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.; see also Albright v. Oliver, 510 U.S. 266, 273 (1994). Since an alternative constitutional claim is available in this case, Plaintiff's substantive due process claims on this front cannot prevail. See Wainwright, 548 F.3d at 163. As such, Plaintiff's claims under the Fourteenth Amendment claims are **DISMISSED with prejudice**.

*Qualified Immunity*

Defendants aver that under the doctrine of qualified immunity, they are immune from suit for money damages in their personal capacity. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11.

At this stage, this Court has concluded that Plaintiff has pled a viable Section 1983 cause of action against Defendants. Therefore, this Court cannot conclude that Plaintiff has failed to

allege that Defendants violated his constitutional rights. This Court finds that a reasonable official would not have believed that the acts allegedly committed by the marshals were lawful in light of clearly established law. Moreover, any reasonable official is aware that it is unlawful to use violence and excessive force when arresting an individual, especially when the Plaintiff did not resist arrest. At this point, this Court cannot conclude, without weighing the evidence, that the marshals acted reasonably under the circumstances, and are entitled to qualified immunity. It remains to be seen whether their actions violated Plaintiff's constitutional rights. Therefore, at this stage, this Court is unable to conclude that Defendants are entitled to qualified immunity, and their motion for summary judgment on this ground is **DENIED.**

Finally, this Court reminds the parties that all representations to the court, submitted to the court through pleadings, motions, and any other document, are bound by FED. R. CIV. P. 11(b)'s mandate. Therefore, all claims, defenses, and other legal arguments that are unwarranted by existing law, are, in fact, frivolous, and can be sanctioned by the courts. In the instant case, Defendants have set forth unwarranted legal arguments, insofar as the current case law is extremely clear as to the applicable statutes in cases such as this one. The methodic inclusion of numerous allegations and defenses is unjustified, and unnecessarily onerous for the courts. Therefore, the parties shall take the foregoing into consideration when appearing before this Court, or face the imposition of sanctions.

**Conclusion**

Based on the foregoing, Defendants' motion for partial summary judgment is **GRANTED in part and DENIED in part**. Plaintiff's Fifth, Eighth, Ninth, and Fourteenth Amendment claims are **DISMISSED with prejudice**. Plaintiff's supervisory liability claims against Aldebol, Maldonado, Delgado, and Ramos, are also **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

**Civil No. 06-1907 (SEC)**                                                                 **15**

San Juan, Puerto Rico, this 13th day of April, 2009.

       *S/Salvador E. Casellas*
       Salvador E. Casellas
       U.S. District Judge